# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09-03065-01-CR-S-ODS |
| | ) | |
| MATTHEW O'DELL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed motions to suppress regarding the evidence seized from a search at a storage unit [Docs. # 29 and 40], to which the government responded [Docs. # 30 and 46], and defendant replied [Doc. # 52]. Thereafter, defendant filed motions to suppress regarding evidence seized from a search of his room at Camp Wakonda [Docs. # 58 and 65], to which the government responded [Doc. # 68]. The matters were set for an evidentiary hearing, which was held before the undersigned on February 15, 2011. The defendant was present with counsel, Nancy Price, and the United States was represented by James Kelleher, Assistant United States Attorney.

This case involves an investigation regarding allegations that defendant was involved with inappropriate contact and conduct with a fifteen-year-old boy. This involved contacting the boy on Myspace on the computer, and text messaging him using a cell phone. The victim indicated that defendant told him he worked at YMCA Camp Wakonda as a supervisor. He allegedly invited the victim to come to the camp to meet the teenaged girl he was pretending to

1

be. The victim did go to the camp and spend the night, and was going another time when defendant allegedly took him to a motel to spend the night, and tried to have sex with him. The victim, in a later interview, stated that he knew defendant had two other cell phones.

On July 31, 2009, Detective Eric Reece, of the Springfield Police Department, secured a search warrant for defendant's room at Camp Wakonda. The warrant authorized a search for, among other things, photographs, graphic image forms in either printed or electronic form, and video tapes depicting child pornography. The warrant was executed that day, and resulted in discovery of video tapes containing a juvenile engaged in sexual behavior. Defendant was then indicted on the charges in the instant case. Upon learning that defendant maintained a storage unit in Republic, Missouri, where he kept many of his belongings, a search warrant was sought for the storage unit, which was issued and executed on August 4, 2009.

Defendant objects to both searches, on the grounds that Detective Reece conducted warrantless searches, and, additionally, that he committed Franks violations and there was not probable cause to issue the search warrants.

Detective Reece testified that he was the lead investigator in this case, involving defendant regarding luring children on Myspace. Detective Reece stated that he obtained a search warrant from Lawrence County for searching defendant's room at the camp. He learned from Jannifer Brown, defendant's girlfriend, that defendant did not keep all his possessions there, but that he also had a storage unit. She gave him a key and access card to the unit. She also provided information regarding what might be in the unit, including computers and storage media. He thought additional items might be located in the storage unit, and he obtained a search warrant for the storage unit in Republic. Prior to obtaining that search warrant, he went to

2

the location to obtain more information.  He did not notice anything unusual. The owners told him that the unit was registered to defendant and that he was behind in his payments. The management had also placed a lock on the unit because his payments were in arrears, and they took the precaution of locking it, pursuant to their policy.  With a search warrant, he entered the storage unit and found items of a digital nature, including a camera and a hard drive or hard drives. Then, he got a search warrant to search the digital media they had confiscated during both of the searches.  That search warrant has not been the subject of a motion to suppress.   During the course of his investigation, Detective Reece testified that to the best of his knowledge, he followed all proper procedures to obtain these warrants.  He made no knowing omissions or false statements.  He believed that all the search warrants were granted with full authority of the courts and that he had the authority to conduct the searches.

On cross examination, Detective Reece testified that two officers were at the scene the morning he obtained the search warrant for the camp room, but he was not there until later.  He might have arrived around 1:40 p.m.   The other officers were securing the room by restricting access until he got there.   He was busy that morning preparing the paperwork for the warrant, and then getting it signed.   He signed the affidavit about 11:15 a.m., and the judge signed the search warrant about 1:00 p.m.

**Camp Wakonda Search**.

Search warrant.

Regarding the search warrant for the room at the camp, defendant makes the conclusory argument in his motion that the affidavit contains inaccurate, false and/or  misleading statements, which were deliberately made with a reckless disregard for the truth, and that there is not

probable cause to support the issuance of the search warrant. In support of his theory, defendant refers to three statements from the affidavit by Detective Reece. One of these is that an alleged victim stated that defendant had several computers and three cell phones in his house. The second statement is that the officer went to an apartment on July 31, 2009, and that the apartment was empty. The third statement is that the officer then contacted Camp Wakonda, and was told that defendant had been living in a room at the camp, that he had been fired that day, and that his personal items, including a computer, were still in the room, where the director of the camp advised that defendant had been living for several weeks. Defendant then "submits that several of the above statements attributed to others are not accurate, are misleading and/or false." Defendant's Motion to Suppress Evidence and Request for a Franks Hearing, at 2 [Doc. # 58]. He states that "[t]he affidavit contains false statements, and such false statements were deliberate or made with a reckless disregard for the truth." Id.

    The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462 U.S. at 238. "When we review the sufficiency of an affidavit supporting a search

warrant, great deference is accorded the issuing judicial officer." U.S. v. Fulgham, 143 F.3d 399, 400-01 (8th Cir. 1998) (citation omitted).

At the hearing, defendant attempted to bolster his allegations regarding the insufficiency of the warrant based on a Franks violations, but failed to raise any genuine issue regarding there having been a deliberately false material statement made or any material omissions.

In this case, the affidavit filed in support of the search warrant clearly provides a substantial basis to determine that probable cause existed to search defendant's room at the camp. Defendant has provided no argument to refute this, other than his conclusory contention that statements contained in the affidavit were false and deliberately made with a reckless disregard for the truth, and that absent the false statements and because of material omissions, the affidavit does not support probable cause. He submits that he has made a preliminary showing that false statements were made, and under the holding in Franks v. Delaware, 438 U.S. 154, 155-56 (1978), his request for a Franks hearing should be granted.

In support of this theory, defendant refers to three statements from the affidavit by Detective Reece. One of these is that an alleged victim stated that defendant had several computers and three cell phones in his house. The second statement is that the officer went to an apartment on July 31, 2009, and that the apartment was empty. The third statement is that the officer then contacted Camp Wakonda, and was told that defendant had been living in a room at the camp, that he had been fired that day, and that his personal items, including a computer, were still in the room, where the director of the camp advised that defendant had been living for several weeks. Defendant then "submits that several of the above statements attributed to others are not accurate, are misleading and/or false." Defendant's Motion to Suppress Evidence and

Request for a Franks Hearing, at 2 [Doc. # 58]. He further states that "[t]he affidavit contains false statements, and such false statements were deliberate or made with a reckless disregard for the truth." Id.

The law is clear that Franks requires that to challenge the validity of a search warrant and to mandate an evidentiary hearing, defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. 438 U.S. at 155-56 [emphasis added].

In this case, after reviewing the record and hearing the testimony at the hearing, the Court finds that it must be recommended that the motion to suppress [Doc. # 58] be denied. It is the Courts finding that the affidavit filed in support of the search warrant clearly provides a substantial basis to determine that probable cause existed to search defendant's room at Camp Wakonda. Detective Reece set out details of the entire investigation in the initial paragraphs in the affidavit, delineating contact with juveniles through computers and cells phones by defendant, who worked at Camp Wakonda. Other than his blanket objection to the three statements made by Detective Reece, the Court cannot discern any viable Franks objection to this background information being included in the affidavit.

Following this, the officer stated that he went to an apartment on July 31st on S. Campbell to contact O'Dell, to see if he might want to seek a search warrant for the apartment. Whether he went on the 30th or the 31st is immaterial. He stated that the apartment was empty and being remodeled. Even assuming that there may have been a mistake about the date, the statement about the apartment being empty provides a logical link for his interest in searching

6

the room at the camp where defendant lived. There is absolutely nothing to suggest that there was any material misrepresentation in that paragraph that would rise to the level of a false and deliberately misleading statement.

The same is true regarding the next paragraph, in which the officer stated that he contacted the camp, was told that defendant had been living there and had been fired, but that his personal items, including a computer, were still in the room. He stated that Matt Shroyer, the director, said that defendant had been living in a room at the camp for several weeks. On cross examination, Detective Reese wasn't sure he had been told defendant was actually fired, and he did not recall who said that defendant kept a computer in his room. He testified that he talked to a female, and he talked to Matt Shroyer.

According to other credible testimony from the hearing, including that of Ashley French, the camp director, Chief Rowe actually called the camp and told her that defendant should be told to leave. Mr. Shroyer's testimony was confirmed by a memo from Ashley French, who stated that she was contacted by Springfield Police Chief Lynn Rowe, at about 8:30 a.m. on July 31st; he alerted them to the fact that defendant had been arrested the night before for an investigation regarding him luring kids into hotel rooms, and that he would recommend that the camp ask him to leave immediately. She then called Matt Shroyer right away; he said that defendant was still in his room at the camp. Ms. French stated that she told Matt Shroyer to get him up and have him leave the premises immediately due to inappropriate conduct, which he did without incident. She passed this along to Matt Shroyer, who told him to do so. Whether or not Detective Reece mistakenly assumed or believed that defendant had been fired from the camp, the fact is not in dispute that defendant left because of an investigation into sexual impropriety

7

with juveniles. There is nothing about this statement that could be characterized as a reckless disregard for the truth. In fact, omitting that statement altogether would not affect the probable cause finding. There is simply no evidence that Detective Reece acted with malfeasance in making this declaration in the affidavit. It is not clear from the testimony who told Detective Reece about a computer in his room. However, given the fact that a victim had testified that he was contacted by defendant on a computer, who told him he worked at the camp, and had actually lured him to the camp, it is obvious that there would be a reasonable assumption that a computer was in the room. This would be even more likely true if defendant had just left the room. It cannot be said that the statement about a computer being in the room was a deliberately false or misleading statement.

Based on a full review of the record, the Court finds that there is no evidence that the affidavit in support of the search warrant for the search at Camp Wakonda contained deliberately false statements or material omissions. There was nothing in Detective Reece's credible testimony, which was bolstered by other independent testimony, to conclude that he made any statements that were recklessly or deliberately false, or that he failed to include some material fact. Reading the affidavit as a whole, it is clear that there was probable cause to issue the search warrant. Even if this were not the case, <u>United States v. Leon</u>, 468 U.S. 897, 920 (1984), would apply because it is clear that Detective Reece acted in objective good faith. Therefore, it will be recommended that the motion to suppress [Doc. # 58] be denied.

Warrantless search.

Defendant also posits that the search of the camp room "was conducted without a warrant on many levels." [Tr. 36]. Defendant argues that Detective Reece searched defendant's room at

Camp Wakonda on the morning of July 31st, before "he ever had a warrant." [Tr. 37]. This theory is based on the speculative argument that Detective Reece could not have executed the warrant on the afternoon of July 31, as he stated, because he was actually at defendant's mother's house in Polk County at that time, arresting defendant. Therefore, it is hypothesized that he was at the camp earlier in the day and searched it then without a warrant.

In response to questioning, Detective Reece repeatedly stated that he had no recollection of ever arresting defendant on July 31st. Therefore, he did not know when he was arrested or booked, but he could not disagree that defendant was arrested at 1:40 p.m. and booked at 2:48. On the other hand, he testified that he worked on obtaining the warrant all morning, was in receipt of it about 1:00 p.m., and executed it after that.

The Court heard testimony from Eric Beck, of the Springfield Police Department, who testified without hesitation that he was the arresting officer on July 31st. The officer testified that he was working on defendant's case on that date as part of the Criminal Investigations Section in the Persons Unit. He was working with Detective Reece. On that date, he was assigned to go to Polk county to arrest defendant, and was accompanied by Detective Nathan Thomas. He believed it was Sergeant Mark Deeds who assigned him to this task. He is certain that Detective Reece was not with him. His whole unit was at different assignments because of the complexity of the case, and because Detective Reece was somewhere else, he was told to do the arrest. Officer Beck testified that he does not recall the booking process at that time at the Greene County Jail, but he knows that defendant was booked according to policy.

The Court finds Officer Beck's testimony to be completely credible, and concludes that there is no mystery surrounding who arrested defendant on the 31st. Conversely, the testimony

9

of defendant's mother, Monica Wilson, in regards to her contention that she knew for a fact that Detective Reece arrested her son was wholly incredible.

Further credible non-biased testimony supports Detective Reece's testimony that law enforcement officers arrived on the scene at the camp in the morning of July 31st, and remained there to secure defendant's room while the search warrant was being obtained, but did not search the room without a warrant. While the Court believes that Detective Reece was completely credible, it also has the benefit of the very convincing and relevant testimony of Matt Shroyer, who worked at Camp Wakonda, and was present on July 31st. He testified that he was told by the camp director that morning, about 8:00 a.m., that he had to tell defendant to "leave at that moment." [Tr. 111]. She had been contacted by law enforcement, and told that defendant should be instructed to leave the camp. He went to defendant's room and told him he had to leave, which he did. After defendant left, Mr. Shroyer locked the door to his room, about 9-9:30 a.m. He was not sure when the police arrived, but he testified that, while they were there, they did "basically nothing." [Tr. 115]. "I had asked if they needed access to the room, or you know, what was going on. I've never been involved. They said, no. *That they had to wait for a warrant to be issued.*" [Id.] [emphasis added]. Mr. Shroyer testified that he knew that law enforcement went into defendant's room sometime after lunch, perhaps around 1-2:00 p.m. or maybe even 4:00 p.m. He could not be sure because it was the last day of camp and there were a lot of activities going on. He also testified that he was trying to keep the campers away from the area of the investigation, and was having to adjust activities in order to accomplish this. He was sure, however, that the search occurred after lunch because he had offered to let the officers have lunch at the camp. He testified that the two officers on the scene were waiting on Lawrence

County to issue a search warrant. Mr. Shroyer testified that Detective Reece did not arrive with the officers in the morning, but that he came in with the search warrant and that is when the search started. He had the key to unlock the door, and he gave them the key when they searched.

Jannifer Brown, defendant's ex-girlfriend testified that she was at the camp on July 31st. On the morning of July 31, she saw two officers, Detective Schwind and Mr. Estrada, at the camp. They were the first ones to get there. Defendant came into her room and told her that Ashley, their boss at the camp, had asked him to leave, so he was getting clothing that was in her bedroom. She asked him what was going on and he said it was "technical stuff." [Tr. 98]. She stated that he gathered his stuff and asked her to go ahead and pack up his things and take them to the storage unit. He left the storage unit key and access card in her bedroom, so that she could pack his things. She did not see any police officers go into defendant's room. Mr. Shroyer told her and other staff that he had locked the door and they were not allowed to go in his room; "that the police were going to come and no one was to go near it." [Tr. 102] . Jannifer Brown testified that she was at Camp Wakonda that morning, that she saw Mr. Shroyer lock defendant's room, and that she never saw any police officers go into the room while she was there.

In summary, Officer Beck testified without reservation that he arrested defendant the afternoon of July 31st. Detective Reece credibly testified that he did not enter the room without a warrant, and that he was working on obtaining the warrant all morning. The record indicates that his affidavit was sworn to at 11:55 a.m., and the search warrant was signed at 1:00 p.m. Matt Shroyer testified that police officers secured the room in the morning, and that no one entered it until Detective Reece arrived with the search warrant. Even defendant's girlfriend testified that she never saw any police officers go into the room while she was there. Therefore, based on the

credible evidence, the Court finds that there is no evidence to disbelieve Detective Reece that he arrived at the camp about 1:40 and then executed the search warrant.

The Court is convinced that any mystery about a surreptitious and illegal warrantless search conducted by Detective Reece (or any other law enforcement officer) of defendant's room at Camp Wakonda on July 31st is wholly dispelled by the credible evidence in this case. Therefore, it must be recommended that the motion to suppress [Doc. # 65] on this issue be denied.

**Storage Unit Search**

Defendant argues that law enforcement searched his storage unit without a warrant [Doc. # 29]. He also asserts that the affidavit in support of the search warrant lacked probable cause because there are numerous false statements in the affidavit and material omissions, and that when the statements are deleted and the omissions added, probable cause would not have existed to support issuance of the warrant. [Doc. # 40]. [1]

Warrantless search.

Regarding defendant's argument that Detective Reece entered the unit without a search warrant before it was issued and executed on August 4, the Court has carefully reviewed the pleadings and the testimony adduced at the hearing, and finds this argument to be without any basis in fact. Defendant speculates that it is more than likely that Detective Reece entered the storage unit prior to obtaining the warrant because he had gotten a key from Jannifer Brown. It

---

[1]The government initially contends that defendant does not have standing to contest the search of the storage unit because his account was in arrears in the amount of $95.00 at the time the search warrant was executed on August 4, 2009. The fact that defendant's account was in arrears was established at the hearing as well. Because of the fact that defendant's account had been in arrears since May, under the terms of the written contract for the storage unit, it could be locked by the lessors. That had occurred in this case. Therefore, it is arguable whether defendant even has standing to contest the search of the storage unit. The Court will assume, however, for purposes of these motions, that he does have standing to challenge the search.

12

is posited that because he had a key, he used it search the storage unit before he obtained the search warrant, a theory for which there is absolutely no evidence.

Detective Reece testified that Jannifer Brown gave him a key and access card for the storage unit when he spoke to her at Camp Wakonda on July 31, 2009. She told him the name of the storage unit and that it was located in Republic, Missouri. Detective Reece does not dispute that he had the key. He also testified that he went to the storage unit before the 4th of August to check out the location for his affidavit, and went on the 4th to execute the warrant. He spoke to staff when he was there the first time. He denied asking them to place an administrative lock on the door. He did tell them what he was doing and that he would be back with a search warrant. They did not tell him that defendant had been there on Friday to pay his bill. He denied having searched the storage unit on the 3rd. He testified that, regardless of the fact that he had a key for the unit, management had placed a lock on it because defendant was behind on his payments, and therefore, he could not have gotten into the storage unit with just the key.

Testimony from management at the storage unit supports the fact that the unit was locked by them, and that it was not accessible with the key alone. Cheryl Ratterree, who is the manager at Pinewood Park Storage, testified. On April 8, 2009, defendant came in and rented a storage unit. He executed a number of rental agreements. If an account balance is not paid for 30 days, the agreement provides that the unit is subject to lock out. He fell behind in May of 2009, and pursuant to standard procedure and the rental agreement, an administrative lock was placed on the unit on about May 6, 2009. She saw about three police officers come to the facility, including Detective Reece, perhaps a couple of times. They went into defendant's storage unit once, when they came with a search warrant. Management removed the safety lock, and she

believed the officers had a key to the unit. She testified that no one would have had access to defendant's storage unit because of his delinquency in making payments from the time the administrative lock was put on in May until execution of the search warrant. She testified that the lock was taken off for the search, and after that for defendant's family to collect his belongings. She did not remember seeing defendant come to the facility to make a payment on July 31st. Ken Lathrop, her assistant, also testified that he took payments from defendant, but did not remember if he took one around July 31st. Either he or Cheryl would put red locks on the units, and that he put a red lock on defendant's unit a couple of months after he first rented it. It was Mr. Lathrop's testimony that neither Detective Reece nor any other law enforcement told Pinewood Storage to put on a red lock on defendant's unit. He never spoke to Detective Reece.

Having reviewed the relevant testimony, the Court finds that there is absolutely no evidence that Detective Reece ever used the key and entered the storage unit before the search warrant was executed. Defendant specifically questions Ms. Ratterree's credibility because he believes that she put the administrative lock on after speaking to Detective Reece. There is no evidence to support that theory; in fact, the testimony of both Ms. Ratterree and Mr. Lathrop refutes it. Based on the totality of the credible evidence, the Court finds that defendant's motion to suppress evidence on the basis of a warrantless search of the storage unit [Doc. # 29] is without merit, and recommends that it be denied.

Search Warrant.

In terms of the alleged inadequacy of the search warrant for the storage unit, defendant contends that the affidavit in support of search warrant lacked probable cause because it: falsely

stated that the key to the unit had been seized during the search at the camp because Detective Reece had obtained it from Jannifer Brown; falsely stated that Jannifer Brown told him that defendant kept another computer in the storage unit; and intentionally made a misleading statement about a SIMS card being found in the storage unit.  It is also asserted that there was a material omission because Detective Reece did not divulge that he had actually already searched the storage unit.  He asserts that Jannifer Brown had possession of the key in question, and that she kept it for five days, that this key was the only key for the storage unit, and that Ms. Brown gave it to the detective on August 3.  Therefore, defendant contends it would have been physically impossible for a key to have been discovered during the search at Camp Wakonda as claimed by Detective Reece.  It is also asserted that Detective Reece omitted certain information in the affidavit, including the "fact" that the officers had already entered the unit with the key provided by Jannifer Brown, and neglects to mention that defendant was there on July 31 to pay his bill.  Additionally, defendant states that even if no Franks violation is shown, the affidavit is nevertheless facially deficient in that it fails to show probable cause to justify the issuance of the warrant.  He contends that the affidavit fails to provide the necessary link as to why contraband would be found at the storage unit.

Ms. Brown testified that she gave Detective Reece the storage unit key and access card, when she was at the camp on July 31st.  It was her testimony that she did this when she saw Detective Reece arrive with the search warrant. When she gave it to him, she explained that she did not know the name of the storage unit facility and could not give him directions, but that she could drive there, get the name and phone number, and give it to him. That's what she did sometime over the weekend.  She testified that she met Detective Reece on Monday, the 3rd of

15

August, at about 10 in the morning. She gave him some things she found in the vehicle, and they talked for a while about the case.

Detective Reece testified that Jannifer Brown, defendant's girlfriend, told him that defendant did not keep all his possessions there, but that he also had a storage unit. She gave him a key and access card to the storage unit while he was at the camp on July 31st. She also provided information regarding what might be in the unit, including computers and digital storage media. He thought additional items might be located in the storage unit, and he obtained a search warrant for the storage unit in Republic. He testified that he went there prior to obtaining the search warrant to gather more information, such as a description of the location while he was there.

Despite this evidence, attested to by both the detective and Ms. Brown, defendant insists that the statement that he "seized the key" during the camp search is deliberately false and misleading. Based on the record, the Court finds that Detective Reece's statement that he got the key during the camp search was true. The fact is, however, that when the issuing judge reviewed the affidavit in support of the search warrant for the storage unit, the important information to ascertain was whether there was probable cause to link the storage unit to evidence of a crime, which there clearly was in this case. Additionally, defendant makes the argument that Detective Reece omitted the "fact" that he had already been in the storage unit; a proposition for which there is absolutely no basis in fact. He could not have materially omitted something that did not happen. Therefore, there was no Franks violation regarding this search warrant.

Based on a full review of the evidence, the Court finds that the affidavit in support of the

warrant for the storage unit contained details of the investigation of the defendant's alleged use of the internet to contact underage children, and his having allegedly assaulted a minor in a motel room as a result of such contact. It delineated details of the search at Camp Wakonda where defendant had been working, and included the fact that during that search, the officer discovered that defendant had a rented storage unit where he kept some of his belongings. Given that it was likely that further evidence of defendant's alleged criminal propensity to prey on children could likely be found in the storage unit, the Court finds that the affidavit clearly provided probable cause for the judge to have issued the warrant.

Conclusion.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence and Request for a Franks hearing, [Doc. # 58], and Motion to Suppress Evidence and All Evidence Seized Therefrom [Doc. # 65], should be denied. It is further

RECOMMENDED that defendant's Motion to Suppress Evidence and All Evidence Seized Therefrom [Doc.#29], and Motion to Suppress Evidence and Request for a Franks hearing [Doc.# 40] should be denied.

                                                        /s/ *James C. England*
                                                        JAMES C. ENGLAND
                                                        United States Magistrate Judge

Date: April 12, 2011